NOTICE OF OBJECTION TO CONFIRMATION

LOANCARE, LLC has filed papers with the Court to object to the Confirmation of the Chapter 13 Plan.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to object to the Confirmation of the Chapter 13 Plan, or if you want the Court to consider your views on the Objection, then on or before, you or your attorney must:

File with the Court an answer, explaining your position at:
**Clerk**
**U.S. Bankruptcy Court**
**50 Walnut Street, 3rd Floor**
**Newark, NJ 07102**

If you mail your response to the Court for filing, you must mail it early enough so that the Court will *receive* it on or before the date stated above.

You must also mail a copy to:

Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103

MARIE-ANN GREENBERG, Trustee
Chapter 13 Standing Trustee, 30 TWO BRIDGES
ROAD SUITE 330
FAIRFIELD, NJ 07004

Attend the hearing scheduled to be held on 07/09/2020 in the NEWARK Bankruptcy Court, at the following address:
**U.S. Bankruptcy Court**
**50 Walnut Street, 3rd Floor**
**Newark, NJ 07102**

If you or your attorney do not make these steps, the Court may decide that you do not oppose the relief sought in the Objection and may enter an Order granting that relief.

Date: June 4, 2020

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

**File No. 837371**
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard
Philadelphia, PA 19103
856-813-5500
FAX Number 856-813-5501
LOANCARE, LLC

| | |
|---|---|
| In Re:<br>       SANDRA R. HANKINS<br><br><br>Debtor | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>Chapter 13<br><br>Case No. 20-13929 - JKS<br><br>Hearing Date: 07/09/2020 |

The undersigned, Phelan Hallinan Diamond & Jones, PC, attorneys for Secured Creditor, LOANCARE, LLC, the holder of a Mortgage on debtor residence located at 916 MEARS STREET, WILMINGTON, NC 28401-5831 hereby objects to the Confirmation of the debtor proposed Chapter 13 Plan on the following grounds:

     1.    On May 14, 2020, Movant filed Proof of Claim listing pre-petition arrears in the amount of $1,150.20. A copy of the Proof of Claim is attached hereto as Exhibit "A" and made a part hereof.

     2.    Debtor's Plan fails to cure the delinquency pursuant to 11 U.S.C. §1322(b)(5).

     3.    Debtor's Plan currently provides for payment to Movant in the amount of $0.00. A copy of the Debtor's Plan is attached hereto as Exhibit B. Movant therefore objects to Debtor's Plan as it is underfunded. Debtor's Plan should be further amended to fully fund the arrears owed to Movant or Confirmation should be denied.

4.    Debtor's Plan fails to provide for the correct current on-going, post-petition regular monthly mortgage payment amount. Movant objects to any amount less than 100% of what is required under the terms of the loan documents. Debtor's Plan should be amended to indicate the correct post-petition monthly payment amount as of the first post-petition payment date owed to Movant or Confirmation should be denied.

WHEREFORE, LOANCARE, LLC respectfully requests that the Confirmation of Debtor Plan be denied.

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

Dated: June 4, 2020

Exhibit A

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | SANDRA R. HANKINS |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | NEWARK Vicinage of the    District of New Jersey (State) |
| Case Number | 20-13929 JKS |

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

The law requires that filer **must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157, and 3571.
Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

LOANCARE, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From Whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

LOANCARE, LLC

3637 SENTARA WAY
Number      Street

VIRGINIA BEACH    VA        23452
City        State      Zip

Contact Phone    (800) 909-9525

Contact Email

**Where should payments to the creditor be sent?** (if different)

LOANCARE, LLC

P.O. BOX 8068
Number      Street

VIRGINIA BEACH    VA        23450
City        State      Zip

Contact Phone    (800) 909-9525

Contact Email

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| **Part 2:** | **Give Information about the Claim as of the Date the Case Was Filed** |
|---|---|

---

**6.** **Do you have any number you use to identify the debtor?**

☐ No

☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 9799

---

**7.** **How much is the claim?** $73,589.05 . **Does this amount include interest or other charges?**

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8.** **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach any document supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

---

**9.** **Is all or part of the claim secured?**

☐ No

☒ Yes. The claim is secured by a lien on property.

**Nature of property:**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official form 410-A) with the *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: 916 MEARS STREET, WILMINGTON, NC 28401-5831

**Basis for perfection:** Recorded Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

| | | |
|---|---|---|
| **Value of property:** | $ | |
| **Amount of the claim that is secured:** | $ $73,589.05 | |
| **Amount of the claim that is unsecured:** | $ | (The sum of the secured and unsecured amounts should match the amount in line 7.) |

**Amount necessary to cure any default as of the date of the petition:** $ $1,150.20

**Annual Interest Rate** (when case was filed) 4.00%

☒ Fixed

☐ Variable

---

**10.** **Is this claim based on a lease?**

☒ No

☐ Yes.    **Amount necessary to cure any default as of the date of the petition.** $

---

**11.** **Is this claim subject to a right to setoff?**

☒ No

☐ Yes.    Identify the property: _____

---

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ | No | |
|---|---|---|---|---|
| | | ☐ | Yes. *Check all that apply:* | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | | ☐ Domestic support obligation (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

*Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date ___May 13, 2020___
　　　　　　　　　MM / DD / YYYY

/s/ Sherri J. Smith
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Sherri J. Smith, Esq. | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Phelan Hallinan Diamond & Jones, PC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1617 JFK Boulevard, Suite 1400 | | |
| | Philadelphia, PA 19103 | | |
| Contact phone | 856-813-5500 | Email | Sherri.Smith@phelanhallinan.com |

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 20-13929 JKS | Principal balance: | $73,633.69 | Principal & interest due: | $313.79 | Principal & interest: | $313.79 |
| Debtor 1: | SANDRA R. HANKINS | Deferred Principal: | $0.00 | Prepetition fees due: | $30.00 | Monthly escrow: | $173.08 |
| Debtor 2: | | Interest due: | $293.87 | Escrow deficiency for funds advanced: | $0.00 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 9799 | Fees, costs due: | $30.00 | Projected escrow shortage: | $806.41 | Total monthly payment: | $486.87 |
| Creditor: | LOANCARE, LLC | Escrow deficiency for funds advanced: | $0.00 | Less funds on hand: | - $0.00 | | |
| Servicer: | LOANCARE, LLC | Less total funds on hand: | - $368.51 | Total prepetition arrearage: | $1,150.20 | | |
| Fixed accrual/daily simple interest/other: | Fixed Accrual | Total debt: | $73,589.05 | | | | |

## Part 5: Loan Payment History from First Date of Default:

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin. Int & esc past due balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
| 07/01/2018 | | | | Beginning Balance | | | | | | | | $74,953.90 | | $20.77 | $0.00 | $0.00 |
| 07/01/2018 | $487.33 | | | Payment Due | | $487.33 | | | | | | $74,953.90 | | $20.77 | $0.00 | $0.00 |
| 07/16/2018 | | | $112.34 | Escrow Advance - Insurance | | $487.33 | | | ($112.34) | | | $74,953.90 | | ($91.57) | $0.00 | $0.00 |
| 07/16/2018 | | | $12.55 | Late Charge | | $487.33 | | | | ($12.55) | | $74,953.90 | | ($91.57) | $12.55 | $0.00 |
| 07/28/2018 | $487.33 | | | Payment Applied | 07/01/2018 | $0.00 | $63.94 | $249.85 | $173.54 | | | $74,889.96 | | $81.97 | $12.55 | $0.00 |
| 08/01/2018 | $487.33 | | | Payment Due | | $487.33 | | | | | | $74,889.96 | | $81.97 | $12.55 | $0.00 |
| 08/14/2018 | | | $112.34 | Escrow Advance - Insurance | | $487.33 | | | ($112.34) | | | $74,889.96 | | ($30.37) | $12.55 | $0.00 |
| 08/16/2018 | | | $12.55 | Late Charge | | $487.33 | | | | ($12.55) | | $74,889.96 | | ($30.37) | $25.10 | $0.00 |
| 08/25/2018 | | $517.33 | | Funds Received | | $487.33 | | | | | $517.33 | $74,889.96 | | ($30.37) | $25.10 | $517.33 |
| 08/25/2018 | | | | Payment Applied | 08/01/2018 | $0.00 | $64.16 | $249.63 | $173.54 | | ($487.33) | $74,825.80 | | $143.17 | $25.10 | $30.00 |
| 08/25/2018 | | | | Credit to Escrow | | $0.00 | | | $30.00 | | ($30.00) | $74,825.80 | | $173.17 | $25.10 | $0.00 |
| 09/01/2018 | $487.33 | | | Payment Due | | $487.33 | | | | | | $74,825.80 | | $173.17 | $25.10 | $0.00 |
| 09/12/2018 | | $512.33 | | Payment Applied | 09/01/2018 | $0.00 | $64.37 | $249.42 | $173.54 | $25.00 | | $74,761.43 | | $346.71 | $0.10 | $0.00 |
| 09/14/2018 | | | $112.34 | Escrow Advance - Insurance | | $0.00 | | | ($112.34) | | | $74,761.43 | | $234.37 | $0.10 | $0.00 |
| 10/01/2018 | $487.33 | | | Payment Due | | $487.33 | | | | | | $74,761.43 | | $234.37 | $0.10 | $0.00 |
| 10/15/2018 | | $487.33 | | Payment Applied | 10/01/2018 | $0.00 | $64.59 | $249.20 | $173.54 | | | $74,696.84 | | $407.91 | $0.10 | $0.00 |
| 10/16/2018 | | | $112.34 | Escrow Advance - Insurance | | $0.00 | | | ($112.34) | | | $74,696.84 | | $295.57 | $0.10 | $0.00 |
| 10/22/2018 | | | $728.95 | Escrow Advance - Taxes | | $0.00 | | | ($728.95) | | | $74,696.84 | | ($433.38) | $0.10 | $0.00 |
| 11/01/2018 | $499.62 | | | Payment Due | | $499.62 | | | | | | $74,696.84 | | ($433.38) | $0.10 | $0.00 |
| 11/14/2018 | | | $112.34 | Escrow Advance - Insurance | | $499.62 | | | ($112.34) | | | $74,696.84 | | ($545.72) | $0.10 | $0.00 |

| Date | Received | Incurred | Description | Applied Date | | | | | | | Balance | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/30/2018 | $499.72 | | Payment Applied | 11/01/2018 | $0.00 | $64.80 | $248.99 | $185.83 | | $0.10 | $74,632.04 | ($359.89) | $0.10 | $0.10 |
| 11/30/2018 | | | Credit to Escrow | | $0.00 | | | $0.10 | | ($0.10) | $74,632.04 | ($359.79) | $0.10 | $0.00 |
| 12/01/2018 | $499.62 | | Payment Due | | $499.62 | | | | | | $74,632.04 | ($359.79) | $0.10 | $0.00 |
| 12/14/2018 | | $112.34 | Escrow Advance - Insurance | | $499.62 | | | ($112.34) | | | $74,632.04 | ($472.13) | $0.10 | $0.00 |
| 12/17/2018 | | $12.55 | Late Charge | | $499.62 | | | | ($12.55) | | $74,632.04 | ($472.13) | $12.65 | $0.00 |
| 12/21/2018 | $499.62 | | Payment Applied | 12/01/2018 | $0.00 | $65.02 | $248.77 | $185.83 | | | $74,567.02 | ($286.30) | $12.65 | $0.00 |
| 01/01/2019 | $499.62 | | Payment Due | | $499.62 | | | | | | $74,567.02 | ($286.30) | $12.65 | $0.00 |
| 01/15/2019 | | $112.34 | Escrow Advance - Insurance | | $499.62 | | | ($112.34) | | | $74,567.02 | ($398.64) | $12.65 | $0.00 |
| 01/16/2019 | | $12.55 | Late Charge | | $499.62 | | | | ($12.55) | | $74,567.02 | ($398.64) | $25.20 | $0.00 |
| 01/26/2019 | $499.62 | | Payment Applied | 01/01/2019 | $0.00 | $65.23 | $248.56 | $185.83 | | | $74,501.79 | ($212.81) | $25.20 | $0.00 |
| 02/01/2019 | $499.62 | | Payment Due | | $499.62 | | | | | | $74,501.79 | ($212.81) | $25.20 | $0.00 |
| 02/14/2019 | | $112.34 | Escrow Advance - Insurance | | $499.62 | | | ($112.34) | | | $74,501.79 | ($325.15) | $25.20 | $0.00 |
| 02/15/2019 | $524.82 | | Funds Received | | $499.62 | | | | | $524.82 | $74,501.79 | ($325.15) | $25.20 | $524.82 |
| 02/15/2019 | | | Payment Applied | 02/01/2019 | $0.00 | $65.45 | $248.34 | $185.83 | | ($499.62) | $74,436.34 | ($139.32) | $25.20 | $25.20 |
| 02/15/2019 | | | Credit to Escrow | | $0.00 | | | $25.20 | | ($25.20) | $74,436.34 | ($114.12) | $25.20 | $0.00 |
| 02/18/2019 | | $12.55 | Late Charge | | $0.00 | | | | ($12.55) | | $74,436.34 | ($114.12) | $37.75 | $0.00 |
| 03/01/2019 | $499.62 | | Payment Due | | $499.62 | | | | | | $74,436.34 | ($114.12) | $37.75 | $0.00 |
| 03/07/2019 | $499.62 | | Payment Applied | 03/01/2019 | $0.00 | $65.67 | $248.12 | $185.83 | | | $74,370.67 | $71.71 | $37.75 | $0.00 |
| 03/14/2019 | | $112.34 | Escrow Advance - Insurance | | $0.00 | | | ($112.34) | | | $74,370.67 | ($40.63) | $37.75 | $0.00 |
| 04/01/2019 | $499.62 | | Payment Due | | $499.62 | | | | | | $74,370.67 | ($40.63) | $37.75 | $0.00 |
| 04/16/2019 | | $112.26 | Escrow Advance - Insurance | | $499.62 | | | ($112.26) | | | $74,370.67 | ($152.89) | $37.75 | $0.00 |
| 04/16/2019 | | $12.55 | Late Charge | | $499.62 | | | | ($12.55) | | $74,370.67 | ($152.89) | $50.30 | $0.00 |
| 04/23/2019 | $499.62 | | Payment Applied | 04/01/2019 | $0.00 | $65.89 | $247.90 | $185.83 | | | $74,304.78 | $32.94 | $50.30 | $0.00 |
| 05/01/2019 | $499.62 | | Payment Due | | $499.62 | | | | | | $74,304.78 | $32.94 | $50.30 | $0.00 |
| 05/16/2019 | | $12.55 | Late Charge | | $499.62 | | | | ($12.55) | | $74,304.78 | $32.94 | $62.85 | $0.00 |
| 06/01/2019 | $499.62 | | Payment Due | | $999.24 | | | | | | $74,304.78 | $32.94 | $62.85 | $0.00 |
| 07/01/2019 | $499.62 | | Payment Due | | $1,498.86 | | | | | | $74,304.78 | $32.94 | $62.85 | $0.00 |
| 07/16/2019 | | $15.00 | Property Inspection | | $1,498.86 | | | | ($15.00) | | $74,304.78 | $32.94 | $77.85 | $0.00 |
| 08/01/2019 | $499.62 | | Payment Due | | $1,998.48 | | | | | | $74,304.78 | $32.94 | $77.85 | $0.00 |
| 08/12/2019 | | $1,348.00 | Escrow Advance - Insurance | | $1,998.48 | | | ($1,348.00) | | | $74,304.78 | ($1,315.06) | $77.85 | $0.00 |
| 08/13/2019 | | $15.00 | Property Inspection | | $1,998.48 | | | | ($15.00) | | $74,304.78 | ($1,315.06) | $92.85 | $0.00 |
| 08/16/2019 | | $12.55 | Late Charge | | $1,998.48 | | | | ($12.55) | | $74,304.78 | ($1,315.06) | $105.40 | $0.00 |
| 08/30/2019 | $1,497.57 | | Funds Received | | $1,998.48 | | | | | $1,497.57 | $74,304.78 | ($1,315.06) | $105.40 | $1,497.57 |
| 08/30/2019 | | | Payment Applied | 05/01/2019 | $1,498.86 | $66.11 | $247.68 | $185.83 | | ($499.62) | $74,238.67 | ($1,129.23) | $105.40 | $997.95 |
| 08/30/2019 | | | Payment Applied | 06/01/2019 | $999.24 | $66.33 | $247.46 | $185.83 | | ($499.62) | $74,172.34 | ($943.40) | $105.40 | $498.33 |
| 08/30/2019 | | | Payment Applied | 07/01/2019 | $499.62 | $66.55 | $247.24 | $185.83 | | ($498.33) | $74,105.79 | ($757.57) | $105.40 | $0.00 |
| 08/30/2019 | | | Credit to Escrow | | $499.62 | | | | | ($1.29) | $74,105.79 | ($758.86) | $105.40 | $0.00 |
| 09/01/2019 | $592.42 | | Payment Due | | $1,092.04 | | | | | | $74,105.79 | ($758.86) | $105.40 | $0.00 |
| 09/16/2019 | | $12.55 | Late Charge | | $1,092.04 | | | | ($12.55) | | $74,105.79 | ($758.86) | $117.95 | $0.00 |
| 09/25/2019 | $588.51 | | Funds Received | | $1,092.04 | | | | | $588.51 | $74,105.79 | ($758.86) | $117.95 | $588.51 |
| 09/25/2019 | | | Payment Applied | 08/01/2019 | $592.42 | $66.77 | $247.02 | $185.83 | | ($498.33) | $74,039.02 | ($573.03) | $117.95 | $90.18 |
| 09/25/2019 | | | Credit to Escrow | | $592.42 | | | | | ($1.29) | $74,039.02 | ($574.32) | $117.95 | $90.18 |
| 10/01/2019 | $592.42 | | Payment Due | | $1,184.84 | | | | | | $74,039.02 | ($574.32) | $117.95 | $90.18 |
| 10/16/2019 | | $12.55 | Late Charge | | $1,184.84 | | | | ($12.55) | | $74,039.02 | ($574.32) | $130.50 | $90.18 |
| 10/25/2019 | $588.51 | | Funds Received | | $1,184.84 | | | | | $588.51 | $74,039.02 | ($574.32) | $130.50 | $678.69 |
| 10/25/2019 | | | Payment Applied | 09/01/2019 | $592.42 | $66.99 | $246.80 | $278.63 | | ($592.42) | $73,972.03 | ($295.69) | $130.50 | $86.27 |
| 11/01/2019 | $592.42 | | Payment Due | | $1,184.84 | | | | | | $73,972.03 | ($295.69) | $130.50 | $86.27 |

| Date | | | Description | Date | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/18/2019 | | $12.55 | Late Charge | | $1,184.84 | | | | ($12.55) | | $73,972.03 | ($295.69) | $143.05 | $86.27 |
| 11/25/2019 | $588.51 | | Funds Received | | $1,184.84 | | | | | $588.51 | $73,972.03 | ($295.69) | $143.05 | $674.78 |
| 11/25/2019 | | | Payment Applied | 10/01/2019 | $592.42 | $67.22 | $246.57 | $278.63 | | ($592.42) | $73,904.81 | ($17.06) | $143.05 | $82.36 |
| 11/26/2019 | | | Credit to Fees/Charges | | $592.42 | | | | $82.36 | ($82.36) | $73,904.81 | ($17.06) | $60.69 | $0.00 |
| 12/01/2019 | $592.42 | | Payment Due | | $1,184.84 | | | | | | $73,904.81 | ($17.06) | $60.69 | $0.00 |
| 12/12/2019 | $610.56 | | Payment Applied | 11/01/2019 | $592.42 | $67.44 | $246.35 | $278.63 | $18.14 | | $73,837.37 | $261.57 | $42.55 | $0.00 |
| 12/13/2019 | | $728.95 | Escrow Advance - Taxes | | $592.42 | | | ($728.95) | | | $73,837.37 | ($467.38) | $42.55 | $0.00 |
| 12/16/2019 | | $12.55 | Late Charge | | $592.42 | | | | ($12.55) | | $73,837.37 | ($467.38) | $55.10 | $0.00 |
| 01/01/2020 | $592.42 | | Payment Due | | $1,184.84 | | | | | | $73,837.37 | ($467.38) | $55.10 | $0.00 |
| 01/16/2020 | | $12.55 | Late Charge | | $1,184.84 | | | | ($12.55) | | $73,837.37 | ($467.38) | $67.65 | $0.00 |
| 01/21/2020 | $604.97 | | Payment Applied | 12/01/2019 | $592.42 | $67.67 | $246.12 | $278.63 | $12.55 | | $73,769.70 | ($188.75) | $55.10 | $0.00 |
| 02/01/2020 | $592.42 | | Payment Due | | $1,184.84 | | | | | | $73,769.70 | ($188.75) | $55.10 | $0.00 |
| 02/28/2020 | $1,209.94 | | Funds Received | | $1,184.84 | | | | | $1,209.94 | $73,769.70 | ($188.75) | $55.10 | $1,209.94 |
| 02/28/2020 | | | Payment Applied | 01/01/2020 | $592.42 | $67.89 | $245.90 | $278.63 | $25.10 | ($617.52) | $73,701.81 | $89.88 | $30.00 | $592.42 |
| 02/28/2020 | | | Payment Applied | 02/01/2020 | $0.00 | $68.12 | $245.67 | $278.63 | | ($592.42) | $73,633.69 | $368.51 | $30.00 | $592.42 |
| 03/01/2020 | $592.42 | | Payment Due | | $592.42 | | | | | | $73,633.69 | $368.51 | $30.00 | $0.00 |
| 03/06/2020 | | | BK Filed | | $592.42 | | | | | | $73,633.69 | $368.51 | $30.00 | $0.00 |
| **Total** | | | | | | | | | | | **$73,633.69** | **$368.51** | **$30.00** | **$0.00** |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500

Attorneys for LOANCARE, LLC

| In Re: | Case No:  20-13929 - JKS |
|---|---|
| Sandra R. Hankins | Judge:  JOHN K. SHERWOOD |
| | Chapter:  13 |

## CERTIFICATION OF SERVICE

1.    I, Aaron Thomas:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC, who represents LOANCARE, LLC in the above captioned matter.

☐ am the _____ in the above case and am representing myself.

2.    On the date below, sent a copy of the following pleadings and/or documents to the parties listed below:

Proof of Claim

3.    I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Dated:  ___05/14/2020___                    /s/ *Aaron Thomas*
                                                                   Aaron Thomas

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Edward Nathan Vaisman<br>Vaisman Law Office<br>33 Wood Avenue South<br>Suite 600<br>Iselin, NJ 08830 | Debtor's Attorney | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Marie-Ann Greenberg<br>Chapter 13 Standing Trustee<br>30 Two Bridges Rd<br>Suite 330<br>Fairfield, NJ 07004 | Trustee | ☐ Hand-delivered<br><br>☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |

\* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.


**LOANCARE**
A SERVICELINK COMPANY

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT**

P.O. Box 8068 | Virginia Beach, VA 23450

SANDRA R HANKINS
C/O EDWARD NATHAN VAISMAN
VAISMAN LAW OFFICE
33 WOOD AVE S STE 600
ISELIN NJ 08830-2717

**Statement Date:** 03/12/2020

### Annual Escrow Account Disclosure Statement

| | |
|---|---|
| Loan Number: | |
| Review Period: | 09/2019 to 03/2020 |
| **Escrow Surplus/Shortage:** | **$0.00** |

### Current Mortgage Payment

| | |
|---|---|
| Principal and/or Interest: | $313.79 |
| Escrow (Taxes and/or Insurance): | $173.08 |
| Prorated Shortage: | $105.55 |
| **Total Monthly Payment:** | **$592.42** |

### New Mortgage Payment

| | |
|---|---|
| Principal and/or Interest: | $313.79 |
| Escrow (Taxes and/or Insurance): | $173.08 |
| **Total New Monthly Payment:** | **$486.87** |
| **Effective Due Date:** | **04/01/2020** |

### Contact Us

**Customer Service/Pay-by-Phone**
1.800.410.1091*
*Calls are randomly monitored and recorded to ensure quality service.*

**Hours**
Monday - Friday: 8 a.m. to 10 p.m. EST
Saturday: 8 a.m. to 3 p.m. EST

**Website: www.newrez.myloancare.com**

**Autodraft Customers:** If your mortgage payment amount has changed, we'll adjust your payment for you.

**Online Bill Payment Customers:** If your mortgage payment amount has changed, you will need to contact your financial services provider to adjust your payment.

### Account History

The following statement of activity in your escrow account from 09/2019 through 03/2020 displays actual activity as it occurred in your escrow account during that period. If your loan was transferred by another mortgage servicer, the prior projection information may not be included below.

| Month | Activity | Projected Amount | Actual Amount | Projected Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|
| | Starting Balance | | | $692.31 | $-758.86 |
| September | Deposit | $173.08 | $184.54* | $865.39 | $-574.32 |
| October | Deposit | $173.08 | $278.63* | $1,038.47 | $-295.69 |
| November | Deposit | $173.08 | $278.63* | $1,211.55 | $-17.06 |
| December | Deposit | $173.08 | $278.63* | $1,384.63 | $261.57 |
| December | County Tax Disbursement | $728.95 | $728.95 | $655.68 | $-467.38 |
| January | Deposit | $173.08 | $278.63* | $828.76 | $-188.75 |
| February | Deposit | $173.08 | $557.26* | $1,001.84 | $368.51 |
| March | Deposit | $173.08 | $278.63*E | $1,174.92 | $647.14 |
| | Total Deposits | $1,211.56 | $2,134.95 | | |
| | Total Disbursements | $728.95 | $728.95 | | |
| | **Account Balance as of 03/31/2020** | | | | **$647.14** |

*An asterisk (*) appearing next to the amount indicates a difference from projected activity either in the amount or the date. The letter "E" next to an amount indicates that the payment or disbursement has not yet occurred, but is estimated to occur on the date shown.*

Last year we anticipated that Disbursements would be made from your Escrow Account during the period equaling $2,076.95. Your lowest monthly mortgage loan balance should not have exceeded $346.16, which is either 1/6 (also equal to no more than two months) of the total projected payments from the account as required by federal law or the reasonable amount required by state law or the amount required by the mortgage contract. Your actual lowest monthly balance was equal to or greater than $-574.32. The items with an asterisk on your Account History may explain this. For further explanation, call our toll-free number shown under the Contact Us section on this statement.

THIS SPACE INTENTIONALLY LEFT BLANK

## Total Anticipated Annual Disbursement

These are the escrow items we anticipate to collect for or pay on your behalf in the upcoming 12-month period. The dollar amount shown may be the last amount paid for that item, or we may project the amount due as defined by federal law. Based on these anticipated disbursements, the amount of your escrow deposit is calculated and displayed here.

| Tax | | | Insurance | | |
|---|---|---|---|---|---|
| Item | Annual Expense | Anticipated Date(s) of Payment | Item | Annual Expense | Anticipated Date(s) of Payment |
| County Tax Disbursement | $728.95 | December 2020 | Hazard Insurance Disbursement | $1,348.00 | June 2020 |
| **Total Anticipated Annual Disbursement = $2,076.95** | | | | | |

## Account Projections

The following information covers your projected escrow account activity from 04/2020 to 03/2021. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. The required Escrow Account Balance displays the amount actually required to be on hand as specified by federal law, state law, or your mortgage documents, and may include a cushion of up to one-sixth of your annual disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow analysis cycle.

| Month | Projected Payments | Disbursements | | Projected Escrow | Required Escrow |
|---|---|---|---|---|---|
| | Projected | Projected | Description | Account Balance | Account Balance |
| | | | Beginning Balance | **$647.14** | **$1,174.92** |
| April | $173.08 | | | $820.22 | $1,348.00 |
| May | $173.08 | | | $993.30 | $1,521.08 |
| June | $173.08 | $1,348.00 | Hazard Insurance Disbursement | $-181.62 | $346.16 |
| July | $173.08 | | | $-8.54 | $519.24 |
| August | $173.08 | | | $164.54 | $692.32 |
| September | $173.08 | | | $337.62 | $865.40 |
| October | $173.08 | | | $510.70 | $1,038.48 |
| November | $173.08 | | | $683.78 | $1,211.56 |
| December | $173.08 | $728.95 | County Tax Disbursement | $127.91 | $655.69 |
| January | $173.08 | | | $300.99 | $828.77 |
| February | $173.08 | | | $474.07 | $1,001.85 |
| March | $173.08 | | | $647.15 | $1,174.93 |

Your Projected Escrow Account Balance as of 03/31/20 is $647.14. Your Required Beginning Escrow Balance according to this analysis should be $1,174.92. Once during this period, your Required Escrow Account Balance should be reduced to $346.16, as shown in June. This amount represents the cushion selected by us as allowed by your mortgage contract, federal and state law.

## Balance Your Escrow Account

Each year your account is reviewed to make sure there is enough money to pay your property taxes and/or insurance. To do that, federal law allows us to require a minimum balance in your account. This cash reserve helps to cover any increase in taxes and/or insurance. Subject to state law limits, your minimum balance normally equals the amount of your escrow payments for about two months. The payments made to and from your escrow account last year help predict your account activity for next year. Last year's activity also helps predict what your lowest account balance is likely to be. To balance your escrow account, we compare what your lowest account balance will likely be next year with your minimum required balance. The difference between those two numbers tells us if you need to deposit additional funds or if we will provide a refund. Any refund over $50 will be returned to you. If the refund amount is less than $50, that amount will be applied to your new monthly payment, and your refund will be spread over 12 months.

| | |
|---|---|
| $346.16 | Your minimum required balance |
| $-181.62 | Your projected lowest account balance for June |
| $0.00 | Your escrow account surplus/shortage |


**LOANCARE**
A SERVICELINK COMPANY

P.O. Box 8068  |  Virginia Beach, VA 23450

## Understanding Your Escrow Changes

Over the past few years, we've worked to simplify our escrow statement. Now, understanding your escrow information is even easier. In this letter, we're breaking down your statement even further to explain the changes in your escrow account information.

 Read ahead to see your escrow payment breakdown and your projected disbursements

 Get answers to some of our most frequently asked questions about escrow accounts

 See how to view your escrow information online

### Your Payment Information

Your current total monthly mortgage payment is $592.42. Your total amount due will change by $105.55. Your new total monthly payment will be $486.87, effective 04/01/2020.

### Your Escrow

Your projected escrow account balance as of 03/31/20 is $647.14.  Your required beginning escrow balance according to this analysis should be $1,174.92.  This means you have a of $0.00.

 A surplus or shortage in your escrow account commonly occurs when:

> The projected amount at closing increases or decreases
> Your property taxes increase or decrease
> Your homeowners insurance increases or decreases
> You change your homeowners insurance company
> We pay delinquent taxes on your behalf

If you have questions about an increase in your property taxes or insurance premiums, please contact your local taxing authority or insurance agent.

### FREQUENTLY ASKED QUESTIONS

**I thought I had a fixed rate. Why did my payment change?**

Your mortgage payment is made up of two parts: your loan payment (principal and interest) and your escrow payment (taxes and insurance). Your loan payment does not increase or decrease unless you have an adjustable rate mortgage (ARM). The portion of your monthly mortgage payment that goes toward escrows (taxes, homeowners and/or mortgage insurance) will change based on your projected amounts due to be paid.

**Your Mortgage Payment**



* Your escrow payment may consist of the items in the three categories shown in gray.

Please note: this chart is provided for demonstration purposes only and is not intended to represent the specific amount you have in each category.

**Why is there extra money in my escrow account?**

Your escrow account makes sure you have money set aside to pay the necessary taxes and insurance.

A certain amount of the funds in your escrow account are designated to help keep your account from going negative. We call that an escrow cushion.

Think of your cushion as overdraft protection for your escrow account. Your cushion is designed to help offset any small changes in your tax and/or insurance bills.  This helps lessen the burden of an escrow shortage when your escrow analysis is completed.  Cushions typically cannot be waived or removed.



P.O. Box 8068 | Virginia Beach, VA 23450

## Check Your Information Online

Visit www.newrez.myloancare.com to:

> View your current escrow account balance
> View your payment information
> View your estimated tax disbursement amounts
> View your insurance premiums
> Enroll for email notifications when escrow disbursements are made

## If You Need Assistance

 Our representatives are ready to assist you should you need further information or have additional questions or concerns. Call 1.800.410.1091 Monday-Friday, 8:00 A.M.-10:00 P.M. Eastern Time, and Saturday, 8:00 A.M.-3:00 P.M. Eastern Time.

Sincerely,

Escrow Department
LoanCare, LLC
NMLS ID 2916

*This summary is not a substitute for the Annual Escrow Account Disclosure Statement and it is important that you still review the enclosed Annual Escrow Account Disclosure Statement in its entirety.*

**TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) IS APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED IN BANKRUPTCY, IS SUBJECT TO THE AUTOMATIC STAY OR IS PROVIDED FOR IN A CONFIRMED PLAN, THIS COMMUNICATION IS FOR INFORMATIONAL PURPOSES ONLY, AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION.**

### How can I lower my escrow?

You may seek additional insurance quotes while maintaining the required coverage. You may contact your taxing authorities and ensure that you have taken advantage of all applicable exemptions.  If you are able to reduce the cost of your insurance and/or are approved for an exemption, please make sure to provide us updated information.

### Can I prepay my escrow so that my payments don't change?

No.  You are required to pay 1/12th of each escrowed item monthly with your principal and interest payment.

Prepared by: CAMILLIA ADAMS

LOAN #

# NOTE

SEPTEMBER 28, 2009                                                    NEW JERSEY
   [Date]                               [City]                          [State]

                    916 MEARS ST, WILMINGTON, NC 28401-5831
                              [Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $91,150.00        (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
BANK OF AMERICA, N.A.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to
receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of    5.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST          day of each month beginning on  NOVEMBER 01, 2009   .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on  OCTOBER 01, 2034    , I still owe amounts under this Note, I will pay those amounts in full on that date, which
is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $552.96

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as
a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan
charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be
reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which
exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe
under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial
Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN          calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    4.000 % of
my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   $SRAL$            Form 3200  1/01
Fixed Rate Note
2005N-XX (09/08)(d/i)                              Page 1 of 2



LOAN #:

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Sandra R. Henkins_ (Seal)                                    _____ (Seal)
SANDRA R. HANKINS                    -Borrower                                                      -Borrower

_____ (Seal)                      _____ (Seal)
                                        -Borrower                                                      -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200  1/01

Fixed Rate Note
2005N-XX (09/08)                                        Page 2 of 2

When Recorded, Return to:
Ditech Financial LLC
2100 East Elliot Road, Building 94 T214
Tempe, AZ 85284

This document was prepared by Ditech Financial LLC

_____ [Space above This Line for Recording Data] _____

Customer(s)[1]: SANDRA HANKINS
Lender/Servicer ("Lender"): Ditech Financial LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 09/28/2009
Account Number: ▉▉▉▉▉▉
Property Address ("Property"): 916 MEARS ST, WILMINGTON, NC 28401

## MODIFICATION AGREEMENT

This Modification Agreement ("Agreement"), made this 26th day of March, 2018, between the Lender and Customer, amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 11/30/2009 and recorded in Book or Liber 5453, at page(s) 1236, and/or Document #2009040284 of the   Register of Deeds          Records of   New Hanover County
                              (Name of Records)                    (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

916 MEARS ST, WILMINGTON, NC 28401
(Property Address)

the real property described in the above-referenced Security Instrument.                    **ORIGINAL**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of 04/01/2018, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $75,081.15 consisting of the unpaid amount(s) loaned to Customer by Lender plus any interest and other amounts capitalized.

2.  Customer promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.000%, from 04/01/2018. Customer promises to make monthly payments of principal and interest of U.S. $313.79, beginning on the 05/01/2018, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.000% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Customer may refer to the monthly billing statement for the escrow amount owed. If on 04/01/2058 (the "Maturity Date"), Customer still owes amounts under the Note and



LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

Form 3179 1/01 (rev. 09/16)
LTR-442

the Security Instrument, as amended by this Agreement, Customer will pay these amounts in full on the Maturity Date. Customer's payment schedule for the modified account is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1 - 40 | 4.000% | 04/01/2018 | $313.79 | $173.54, may adjust periodically | $487.33, may adjust periodically | 05/01/2018 | 480 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Customer is not a natural person and a beneficial interest in Customer is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Customer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Customer must pay all sums secured by the Security Instrument. If Customer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Customer.

    Customer understands and agrees that:

    (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e) Customer acknowledges that Lender may be required to report to the Internal Revenue Service any debt forgiveness of $600 or more in principal, subject to certain exceptions that may or may not apply to Customer. If required, such reporting may result in consequences regarding Customer's federal, state or local tax liability. In addition, if Customer receives public assistance, the forgiveness of debt may affect Customer's eligibility for these benefits. Ditech cannot provide any advice or guidance

regarding possible tax consequences or effect on any public assistance benefits. Customer may wish to consult with a tax professional about any possible tax consequences and/or Customer's public assistance office regarding other consequences that may result from the forgiveness of debt.

(f)     Customer agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Customer.

(g)     Customer authorizes Lender, and Lender's successors and assigns, to share certain Customer public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Customer's account balances and activity, with an authorized third Agency or similar entity that is assisting Customer in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Customer's account ("Authorized Third Party").

Customer understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Customer's account), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Customer's account, to any insurer, guarantor, or servicer that insures, guarantees, or services Customer's account or any other mortgage account secured by the Property on which Customer is obligated, or to any companies that perform support services to them in connection with the account or any other mortgage account secured by the Property on which Customer is obligated.

Customer consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Customer's account.

4.     By this paragraph, lender is notifying customer that any prior waiver by lender of customer's obligation to pay to lender funds for any or all escrow items is hereby revoked, and customer has been advised of amount needed to fund the escrow items.

Customer will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Customer shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Customer shall pay Lender the Funds for Escrow Items unless Lender waives Customer's obligation to pay the Funds for any or all Escrow Items. Lender may waive Customer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Customer shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Customer's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If Customer is obligated to pay Escrow Items directly, pursuant to a waiver, and Customer fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and Customer shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in

accordance with the Account Documents, and, upon such revocation, Customer shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Customer for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Customer interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Customer any interest or earnings on the Funds. Lender and Customer can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Customer, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to Customer any Funds held by Lender.

5.    Customer also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Customer's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Customer is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Customer waives any Timely Payment Rewards rate reduction to which Customer may have otherwise been entitled; and

    (b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6.    Customer understands and agrees that:



(a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Customer agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. Customer understands that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If Customer elects not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Customer will not be eligible for a modification.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

Form 3179 1/01 (rev. 09/16)
LTR-442

In Witness Whereof, the Lender and I have executed this Agreement.

Ditech Financial LLC

Lender

By: _____
    Anita L. Garvin
    Director, Default Services
    License #: ▮▮▮

_____ (Seal)
Customer

_April 16, 2018_
Date

_____ (Seal)
Customer

_April 16, 2018_
Date

_____
Date

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [Space Below This Line For Acknowledgments] _____

By: _____    APR 2 6 2018

Cruz Cervantes
Licensed Loss Mitigation Specialist
License Number ▮▮▮

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

Form 3179 1/01 (rev. 09/16)
LTR-442





FOR REGISTRATION REGISTER OF DEEDS
JENNIFER H. MACNEISH
NEW HANOVER COUNTY, NC
2009 NOV 30 10:27:03 AM
BK:5453 PG:1236-1249 FEE:$66.00

INSTRUMENT # 2009040284

# DEED OF TRUST

Return To:

**Southwest Financial Services, LTD.**
P.O. Box 300
Cincinnati, OH 45273-8043

Prepared By:
CAMILLIA ADAMS
BANK OF AMERICA, N.A.

3490 PIEDMONT RD NE, #420
ATLANTA
GA 30305

[Doc ID #]

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated   SEPTEMBER 28, 2009   , together with all Riders to this document.

**(B)** "Borrower" is
SANDRA R HANKINS

Borrower is the trustor under this Security Instrument.

**(C)** "Lender" is
BANK OF AMERICA, N.A.
Lender is a
NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES         . Lender's address is
101 South Tryon Street, Charlotte, NC 28255
Lender is the beneficiary under this Security Instrument.

**(C-I)**"Mortgage Broker" is Not Applicable

**(D)** "Trustee" is

---

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3034 1/01



DOC ID #: ███████████

(E)  "Note" means the promissory note signed by Borrower and dated     SEPTEMBER 28, 2009 . The Note states that Borrower owes Lender
NINETY ONE THOUSAND ONE HUNDRED FIFTY and 00/100

Dollars (U.S. $ 91,150.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    OCTOBER 01, 2034        .
(F)  "Property" means the Property that is described below under the heading "Transfer of Rights in the Property."
(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] . |

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L)  "Escrow Items" means those items that are described in Section 3.
(M)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the

            COUNTY                    of              NEW HANOVER                    :
      [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.


Parcel ID Number: ███████████                        which currently has the address of
                          916 MEARS ST, WILMINGTON
                                [Street/City]
North Carolina 28401-5831   ("Property Address"):
        [Zip Code]

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          ⟶SR+6          Form 3034 1/01
Deed of Trust-NC
2006--NC (05/08)                          Page 2 of 10

DOC ID #: ▓▓▓▓▓▓▓▓▓

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.     **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 then Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.     **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.     **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        *SKH*        Form 3034 1/01

Deed of Trust-NC
2006--NC (05/08)                                    Page 3 of 10

DOC ID # ▇▇▇▇▇▇▇

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3034 1/01

DOC ID ▮▮▮▮▮▮▮▮▮

be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.    **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          *SKH*          Form 3034 1/01

Deed of Trust-NC
2006--NC (05/08)                                    Page 5 of 10

DOC ID #:

loss reserve, if permitted under Applicable Law, in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve, if permitted under Applicable Law. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, if permitted under Applicable Law, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)   Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)   Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.   Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                      Form 3034 1/01

Deed of Trust-NC
2006--NC (05/08)                                        Page 6 of 10

DOC ID #

provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the cosigner's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          *SKH*          Form 3034 1/01

Deed of Trust-NC
2006--NC (05/08)          Page 7 of 10

DOC ID #: ████████

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.  Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC ID #: ████████

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of      5.000 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** Attorneys' fees must be reasonable.

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
SANDRA R. HANKINS                              - Borrower

_____ (Seal)
                                                              - Borrower

_____ (Seal)
                                                              - Borrower

_____ (Seal)
                                                              - Borrower

NEW JERSEY—S4

DOC ID #:

STATE OF ~~NORTH CAROLINA~~,   ~~Union~~ County ss:
I, _DEBORAH A. YOUNG_
a Notary Public of the County of ____Union____ , ___New Jersey—S4___, State of ~~North Carolina~~, do hereby
certify that _SANDRA R. HAWKINS_ _____

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.
Witness my hand and official seal this ___28___ day of _SEPTEMBER, 2009_ .

My Commission Expires:

_Deborah A. Young_
Notary Public

```
DEBORAH A YOUNG
Notary Public
State of New Jersey
My Commission Expires May 16, 2012
```

STATE OF NORTH CAROLINA,                                        County ss:
   The foregoing certificate of _____,
a Notary Public of the County of _____ , State of _____,
is certified to be correct.
   This _____ day of _____ .

Registrar of Deeds

By _____
   Deputy Assistant

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3034 1/01

Deed of Trust-NC
2006--NC (05/08)                                   Page 10 of 10

# SECOND HOME RIDER

[Doc ID #]

THIS SECOND HOME RIDER is made this TWENTY–EIGHTH day of
SEPTEMBER, 2009 , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to
BANK OF AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"),
which is located at:

916 MEARS ST
WILMINGTON, NC 28401–5831
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further
covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

6.    **Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home.
Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times,
and shall not subject the Property to any timesharing or other shared ownership arrangement or to any
rental pool or agreement that requires Borrower either to rent the Property or give a management firm
or any other person any control over the occupancy or use of the Property.

MULTISTATE SECOND HOME RIDER--Single Family--Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT

*SKH*                    Form 3890 1/01

CONV/VA Second Home Rider
2365R-XX (09/08)(d/i)                    Page 1 of 2

DOC ID #: ████████████

**8.  Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)
                                                  — Borrower
SANDRA R. HANKINS

_____ (Seal)
                                                  — Borrower

_____ (Seal)
                                                  — Borrower

_____ (Seal)
                                                  — Borrower

**MULTISTATE SECOND HOME RIDER--Single Family--Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT**                                      **Form 3890 1/01**

CONV/VA Second Home Rider
2365R-XX (09/08)                    Page 2 of 2

EXHIBIT "A"

SITUATE IN THE COUNTY OF NEW HANOVER, STATE OF NORTH CAROLINA:

    BEGINNING IN THE SOUTHERN LINE OF MEARES STREET AT A POINT 64 FEET WEST OF
ITS INTERSECTION WITH THE WESTERN LINE OF TENTH STREET; RUNS THENCE
WESTWARDLY ALONG THE SOUTHERN LINE OF MEARES STREET, 33 FEET; THENCE
SOUTHWARDLY AND PARALLEL WITH TENTH STREET, 110 FEET; THENCE EASTWARDLY,
PARALLEL WITH MEARES STREET, 33 FEET; THENCE NORTHWARDLY, PARALLEL WITH
TENTH STREET, 110 FEET TO THE SOUTHERN LINE OF MEARES STREET, THE
BEGINNING, SAME BEING PART OF LOTS 2 AND 3 BLOCK 11 ACCORDING TO THE
OFFICIAL PLAN OF THE CITY OF WILMINGTON, N.C.

TAX I.D. NO:

BEING THE SAME PROPERTY CONVEYED BY NORTH CAROLINE SPECIAL WARRANTY DEED
GRANTOR:          LEOLA DINKINS HANKINS, UNMARRIED
GRANTEE:          SANDRA R. HANKINS,
DATED:            1/25/2007
RECORDED:         1/29/2007
DOC#/BOOK-PAGE:   2007004167

NOTE: FOR STREET NUMBERING PURPOSES KNOWN AS: 916 MEARS STREET, WLIMINGTON,
NORTH CAROLINA 28401

END OF SCHEDULE A



JENNIFER H. MACNEISH
REGISTER OF DEEDS, NEW HANOVER
216 NORTH SECOND STREET

WILMINGTON, NC 28401

*****************************************************************************************************

| | |
|---|---|
| **Filed For Registration:** | **11/30/2009 10:27:03 AM** |
| **Book:** | **RE   5453  Page: 1236-1249** |
| **Document No.:** | **2009040284** |
| | **14 PGS    $66.00** |
| **Recorder:** | **CRESWELL, ANDREA** |

State of North Carolina, County of New Hanover

**PLEASE RETAIN YELLOW TRAILER PAGE WITH ORIGINAL DOCUMENT.**

FOR REGISTRATION REGISTER OF DEEDS
TAMMY THEUSCH BEASLEY
NEW HANOVER COUNTY , NC
2013 JUL 30 08:54:49 AM
BK:5758 PG:536-537 FEE:$26.00

This space for Recorder's use

| | Recording Requested By: | When recorded mail to: |
|---|---|---|
| | **Bank of America** | **CoreLogic** |
| | Prepared By: | **Mail Stop: ASGN** |
| | **Marcus Jones** | **1 CoreLogic Drive** |
| | | **Westlake, TX 76262-9823** |
| | **16001 N. Dallas Pkwy** | |
| Property Address: | **Addison, TX 75001** | |
| **916 Mears St** | | |
| **Wilmington, NC 28401-5831** | | |

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **GREEN TREE SERVICING LLC** whose address is **7360 S. KYRENE ROAD, TEMPE, AZ 85283** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| Original Lender: | **BANK OF AMERICA, N.A.** |
|---|---|
| Borrower(s): | **SANDRA R HANKINS** |
| Original Trustee: | **NO TRUSTEE NAME APPEARS ON DOCUMENT** |
| Date of Deed of Trust: | 9/28/2009 |
| Original Loan Amount: | $91,150.00 |

Recorded in **New Hanover County, NC** on: 11/30/2009, book **RE 5453**, page **1236** and instrument number **2009040284**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed and satisfied on  **7·16·13**

**Bank of America, N.A.**

By:  ~Lamonique R. Smiley~

~Lamonique R. Smiley~ ,
~Assistant Vice President~

State of TX, County of __**DALLAS**__

On __JUL 1 6 2013__, before me, _____**LAUNI DEE COOPER**_____ , a Notary Public, personally appeared _____**Lamonique R. Smiley**_____ , _____**Assistant Vice President**_____ of Bank of America, N.A. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: _____**LAUNI DEE COOPER**_____
My Commission Expires: __JUL 0 8 2014__

LAUNI DEE COOPER
Notary Public, State of Texas
My Commission Expires
July 08, 2014



## TAMMY THEUSCH BEASLEY
## REGISTER OF DEEDS, NEW HANOVER
## 216 NORTH SECOND STREET

### WILMINGTON, NC 28401

| | |
|---|---|
| **Filed For Registration:** | **07/30/2013 08:54:49 AM** |
| **Book:** | **RE   5758  Page: 536-537** |
| **Document No.:** | **2013027787** |
| | **2 PGS    $26.00** |
| **Recorder:** | **CRESWELL, ANDREA** |

State of North Carolina, County of New Hanover

**PLEASE RETAIN YELLOW TRAILER PAGE WITH ORIGINAL DOCUMENT.**

**BK: RB 6202**
**PG: 301 - 301**
RECORDED:

03/20/2019

09:49:00 AM

BY: ANDREA CRESWELL

ASSISTANT

█████████

NC FEE $26.00

**NEW HANOVER COUNTY,**
TAMMY THEUSCH BEASLEY
**REGISTER OF DEEDS**

EXTX $0.00

ELECTRONICALLY RECORDED

█████████

**When Recorded Return To:**
Ditech Financial LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

█████████

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Submitted electronically by Nationwide Title Clearing, Inc. in compliance with North Carolina statutes governing recordable documents and the terms of the Submitter Agreement with the NEW HANOVER County Register of Deeds. GS 47-14 (a1) (5)

**FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 2100 E. ELLIOT RD., BLDG 94, Mailstop T314, TEMPE, AZ 85284, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to **NEW RESIDENTIAL MORTGAGE LLC, WHOSE ADDRESS IS 1345 AVENUE OF THE AMERICAS, 45th FLOOR, NEW YORK, NY 10105 (212)798-6100, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust executed by **SANDRA R HANKINS** to **BANK OF AMERICA, N.A.** in the amount of $91,150.00, was recorded as **Instrument # 2009040284**, in the office of the Recorder of **NEW HANOVER** County, **North Carolina**.

**Dated this 20th day of March in the year 2019**
**DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC**

*[signature]*

**HOLLY HARDY**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 20th day of March in the year 2019, by Holly Hardy as VICE PRESIDENT of DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*[signature]*

**ASHLEY MORRELL**
**COMM EXPIRES: 04/29/2022**

ASHLEY MORRELL
Notary Public - State of Florida
Commission # ████████
My Comm. Expires Apr 29, 2022
Bonded through National Notary Assn.

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

████████████████████████

Exhibit B

**STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.**

**0** Valuation of Security    **0** Assumption of Executory Contract or Unexpired Lease    **0** Lien Avoidance

**Last Revised September 1, 2018**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

IN RE:

Hankins, Sandra R.
_____
                    Debtor(s)

Case No. 20-13929

Judge Sherwood

### CHAPTER 13 PLAN AND MOTIONS

[ ] Original                    **[x]** Modified/Notice Required

[ ] Motions Included            [ ] Modified/No Notice Required

Date: May 21, 2020

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE

#### YOUR RIGHTS MAY BE AFFECTED

You should have received from the court a separate *Notice of the Hearing on Confirmation of Plan*, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the *Notice*. Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien. The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate. An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

---

The following matters may be of particular importance. Debtors must check one box on each line to state whether the plan includes each of the following items. If an item is checked as "Does Not" or if both boxes are checked, the provision will be ineffective if set out later in the plan.

---

THIS PLAN:

[ ] DOES **[X]** DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

[ ] DOES **[X]** DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

[ ] DOES **[X]** DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney: **ENV**        Initial Debtor: **SRH**        Initial Co-Debtor:

## Part 1: Payment and Length of Plan

a.   The debtor shall pay $ **735.00** per **month** to the Chapter 13 Trustee, starting on _____ for approximately **60** months.

b.   The debtor shall make plan payments to the Trustee from the following sources:
     **[X]**  Future Earnings
     [ ]  Other sources of funding (describe source, amount and date when funds are available):

c.   Use of real property to satisfy plan obligations:
     [ ]  Sale of real property
          Description:
          Proposed date for completion: _____

     [ ]  Refinance of real property
          Description:
          Proposed date for completion: _____

     [ ]  Loan modification with respect to mortgage encumbering property
          Description:
          Proposed date for completion: _____

d.   [ ]  The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

e.   [ ]  Other information that may be important relating to the payment and length of plan:

## Part 2: Adequate Protection [X] NONE

a. Adequate protection payments will be made in the amount of $ **None** to be paid to the Chapter 13 Trustee and disbursed pre-confirmation to _____ (creditor).

b. Adequate protection payments will be made in the amount of $ _____ to be paid directly by the debtor(s) outside the Plan, pre-confirmation to _____ (creditor).

## Part 3: Priority Claims (Including Administrative Expenses)

a. All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
|---|---|---|
| Internal Revenue Service | Taxes | $130,000 |
| NJ Dept of Taxation | Taxes | $5300 |

b. Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount:
Check one:
**[X]** None
[ ] The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C.1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
|---|---|---|---|
| **None** | | | |

## Part 4: Secured Claims

2

**a. Curing Default and Maintaining Payments on Principal Residence: [X]NONE**

The Debtor shall pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| **None** | | | | | |

**b. Curing and Maintaining Payments on Non-Principal Residence & other loans or rent arrears: [X] NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| **None** | | | | | |

**c. Secured claims excluded from 11 U.S.C. 506: [X] NONE**

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor | Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|---|---|---|---|---|
| **None** | | | | |

**d. Requests for valuation of security, Cram-down, Strip Off & Interest Rate Adjustments [X] NONE**

1.) The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that value shall be treated as an unsecured claim. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this section ALSO REQUIRES
the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to be Paid |
|---|---|---|---|---|---|---|---|
| **None** | | | | | | | |

2.) Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim

shall discharge the corresponding lien.

   **e. Surrender [X] NONE**

   Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
| None | | | |

   **f. Secured Claims Unaffected by the Plan [ ] NONE**

   The following secured claims are unaffected by the Plan:
   **Loancare - Paid outside the plan directly to the secured creditor.**
   **New Rez - Paid outside the plan directly to the secured creditor.**
   **Nissan - Paid outside the plan directly to the secured creditor.**

   **g. Secured Claims to Be Paid in Full Through the Plan [X] NONE**

| Creditor | Collateral | Total Amount to be Paid through the Plan |
|---|---|---|
| None | | |

## Part 5: Unsecured Claims [ ] NONE

   **a. Not separately classified** allowed non-priority unsecured claims shall be paid:

   ___ Not less than $ _____ to be distributed *pro rata*
   ___ Not less than _____ percent
   **x** *Pro Rata* distribution from any remaining funds

   b. **Separately Classified Unsecured Claims** shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|---|---|---|---|
| None | | | |

## Part 6: Executory Contracts and Unexpired Leases [X] NONE

   (NOTE: See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

   All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|---|---|---|---|---|
| None | | | | |

## Part 7: Motions [ ] NONE

**NOTE: All plans containing motions must be served on all potentially affected creditors, together with local form, Notice of Chapter 13 Plan Transmittal, within the time and in the manner set forth in D.N.J. LBR 3015-1. A Certification of Service, Notice of Chapter 13 Plan Transmittal and valuation must be filed with the Clerk of Court when the plan and**

transmittal notice are served.

### a. Motion to Avoid Liens under 11 U.S.C. Section 522(f). [ ] NONE
The Debtor moves to avoid the following liens that impair exemptions:

| Creditor | Nature of Collateral | Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|---|---|---|---|---|---|---|---|
| **None** | | | | | | | |

### b. Motion to Void Liens and Reclassify Claim from Secured to Completely Unsecured. [X] NONE

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Total Amount of Lien to be Reclassified |
|---|---|---|---|---|---|---|
| **None** | | | | | | |

### c. Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured. [X] NONE

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|---|---|---|---|---|---|
| **None** | | | | | |

## Part 8: Other Plan Provisions

### a. Vesting of Property of the Estate

**X**  Upon Confirmation
___ Upon Discharge

### b. Payment Notices

Creditors and Lessors provided for in Sections 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

### c. Order of Distribution

The Standing Trustee shall pay allowed claims in the following order:

1) **Trustee Commissions**
2) **Other Administrative Claims**
3) **Secured Claims**
4) **Lease Arrearages**

    5) **Priority Claims**
    6) **General Unsecured Claims**

    **d. Post-petition claims** The Standing Trustee **[ ]** is, **[X]** is not authorized to pay post-petition claims filed pursuant to 11
U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

## Part 9: Modification **[ ] NONE**

If this plan modifies a Plan previously filed in this case, complete the information below.

Date of Plan being modified:     **5/21/2020**

| Explain below **why** the Plan is being modified. | Explain below **how** the Plan is being modified. |
|---|---|
| **Adding correct monthly trustee payment amount; Adding priority tax claims; Adding treatment of secured creditors; Adding how unsecured creditors will be paid by the trustee.** | **Changing part 1a; 3a; 4f; 5a** |

Are Schedules I and J being filed simultaneously with this Modified Plan? **[ ]** Yes **[X]** No

## Part 10: Non-Standard Provision(s): Signatures Required

    Non-Standard Provisions Requiring Separate Signatures:

    **[X]** NONE
    **[ ]** Explain here:

    Any non-standard provisions placed elsewhere in this plan are ineffective.

## Signatures

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

By signing and filing this document, the debtor(s), if not represented by an attorney, or the attorney for the debtor(s) certify that
the wording and order of the provisions in this Chapter 13 Plan are identical to Local Form, Chapter 13 Plan and Motions, other
than any non-standard provisions included in Part 10.

I certify under penalty of perjury that the above is true.

Date: **May 21, 2020**          */s/ Sandra R. Hankins*
                             Debtor

Date: _____

                             Joint Debtor

Date: **May 21, 2020**          */s/ Edward Vaisman*
                             Attorney for the Debtor(s)

United States Bankruptcy Court
District of New Jersey

In re:                                                                          Case No. 20-13929-JKS
Sandra R. Hankins                                                               Chapter 13
            Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-2          User: admin              Page 1 of 2            Date Rcvd: May 27, 2020
                              Form ID: pdf901          Total Noticed: 37

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
May 29, 2020.
db            Sandra R. Hankins,    1393 Essex St,    Rahway, NJ 07065-5042
cr           +LOANCARE, LLC,    Phelan Hallinan & Schmieg, PC,    1617 JFK Boulevard,    Suite 1400,
               Philadelphia, PA 19103-1814
518798345     American Express National Bank,    c/o Becket and Lee LLP,    PO Box 3001,
               Malvern  PA 19355-0701
518752504     Amex,    PO Box 297871,    Fort Lauderdale, FL 33329-7871
518752505     Barclays Bank Delaware,    PO Box 8803,    Wilmington, DE  19899-8803
518798346     Capital One, N.A.,    c/o Becket and Lee LLP,    PO Box 3001,    Malvern PA 19355-0701
518799725    +JPMorgan Chase Bank, N.A.,    s/b/m/t Chase Bank USA, N.A.,
               c/o Robertson, Anschutz & Schneid, P.L.,    6409 Congress Avenue, Suite 100,
               Boca Raton, FL 33487-2853
518835126    +LOANCARE, LLC,    LOANCARE, LLC,    3637 SENTARA WAY,    VIRGINIA BEACH VA 23452-4262
518830740    +Midland Credit Management, Inc.,    PO Box 2037,    Warren, MI 48090-2037
518835494     NewRez LLC d/b/a Shellpoint Mortgage Servicing,    PO Box 10826,    Greenville, SC 29603-0826
518752516     Nissan Motor Acceptanc,    PO Box 660360,    Dallas, TX  75266-0360
518817902    +Nissan Motor Acceptance Corporation,    PO Box 9013, Addison, Texas 75001-9013
518752517    ++STATE OF NEW JERSEY,    DIVISION OF TAXATION BANKRUPTCY UNIT,    PO BOX 245,
               TRENTON NJ 08646-0245
               (address filed with court: Nj Division Of Taxation,    Pob 245 Bankruptcy Section,
               Trenton, NJ  08695)
518813931    +U.S. Bank National Association, Trustee (See 410),    c/o Specialized Loan Servicing LLC,
               8742 Lucent Blvd, Suite 300,    Highlands Ranch, Colorado 80129-2386
518752519    +specialized loan servicing,    8742 Lucent Blvd,    Littleton, CO 80129-2386

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
smg           E-mail/Text: usanj.njbankr@usdoj.gov May 27 2020 23:41:35    U.S. Attorney,    970 Broad St.,
               Room 502,    Rodino Federal Bldg.,    Newark, NJ  07102-2534
smg          +E-mail/Text: ustpregion03.ne.ecf@usdoj.gov May 27 2020 23:41:35    United States Trustee,
               Office of the United States Trustee,    1085 Raymond Blvd.,    One Newark Center,    Suite 2100,
               Newark, NJ 07102-5235
518752506     E-mail/PDF: AIS.cocard.ebn@americaninfosource.com May 27 2020 23:37:45
               Capital One Bank USA N,    PO Box 30281,    Salt Lake City, UT  84130-0281
518752508     E-mail/Text: BNC-ALLIANCE@QUANTUM3GROUP.COM May 27 2020 23:41:21    Comenity Bank/Lnbryant,
               PO Box 182789,    Columbus, OH  43218-2789
518752509     E-mail/Text: BNC-ALLIANCE@QUANTUM3GROUP.COM May 27 2020 23:41:21    Comenitybank/catherine,
               PO Box 182789,    Columbus, OH  43218-2789
518752510     E-mail/Text: BNC-ALLIANCE@QUANTUM3GROUP.COM May 27 2020 23:41:21    Comenitycb/hsn,
               PO Box 182120,    Columbus, OH  43218-2120
518752511     E-mail/PDF: creditonebknotifications@resurgent.com May 27 2020 23:38:16    Credit One Bank NA,
               PO Box 98872,    Las Vegas, NV  89193-8872
518761042     E-mail/Text: mrdiscen@discover.com May 27 2020 23:41:02    Discover Bank,
               Discover Products Inc,    PO Box 3025,    New Albany, OH  43054-3025
518752512     E-mail/Text: mrdiscen@discover.com May 27 2020 23:41:02    Discover Fin Svcs LLC,
               PO Box 15316,    Wilmington, DE  19850-5316
518752514     E-mail/Text: JCAP_BNC_Notices@jcap.com May 27 2020 23:41:40    Jefferson Capital Syst,
               16 McLeland Rd,    Saint Cloud, MN  56303-2198
518821301     E-mail/Text: JCAP_BNC_Notices@jcap.com May 27 2020 23:41:40    Jefferson Capital Systems LLC,
               PO Box 7999,    Saint Cloud Mn 56302-9617
518752507     E-mail/PDF: ais.chase.ebn@americaninfosource.com May 27 2020 23:38:38    Chase Card,
               PO Box 15298,    Wilmington, DE  19850-5298
518752515    +E-mail/Text: bncnotices@becket-lee.com May 27 2020 23:41:05    Kohls/capone,
               N56 W 17000 Ridgewood Dr,    Menomonee Falls, WI 53051-7096
518830901     E-mail/PDF: resurgentbknotifications@resurgent.com May 27 2020 23:38:17    LVNV Funding, LLC,
               Resurgent Capital Services,    PO Box 10587,    Greenville, SC 29603-0587
518758631    +E-mail/PDF: cbp@onemainfinancial.com May 27 2020 23:38:34    OneMain Financial,
               P.O. Box 3251,    Evansville, IN 47731-3251
518752518     E-mail/PDF: cbp@onemainfinancial.com May 27 2020 23:38:32    Onemain,    PO Box 1010,
               Evansville, IN  47706-1010
518816848     E-mail/PDF: PRA_BK2_CASE_UPDATE@portfoliorecovery.com May 28 2020 08:39:52
               Portfolio Recovery Associates, LLC,    c/o Barclays Bank Delaware,    POB 41067,
               Norfolk VA 23541
518819735     E-mail/Text: bnc-quantum@quantum3group.com May 27 2020 23:41:28
               Quantum3 Group LLC as agent for,    MOMA Trust LLC,    PO Box 788,    Kirkland, WA  98083-0788
518752520     E-mail/PDF: gecsedi@recoverycorp.com May 27 2020 23:38:30    Syncb/amazon,    PO Box 965015,
               Orlando, FL 32896-5015
518752521     E-mail/PDF: gecsedi@recoverycorp.com May 27 2020 23:38:01    Syncb/qvc,    PO Box 965005,
               Orlando, FL 32896-5005
518752769    +E-mail/PDF: gecsedi@recoverycorp.com May 27 2020 23:38:01    Synchrony Bank,
               c/o of PRA Receivables Management, LLC,    PO Box 41021,    Norfolk, VA 23541-1021
518835673    +E-mail/PDF: gecsedi@recoverycorp.com May 27 2020 23:37:35    Synchrony Bank,
               c/o PRA Receivables Management, LLC,    PO Box 41021,    Norfolk, VA 23541-1021
                                                                                      TOTAL: 22

```
District/off: 0312-2          User: admin             Page 2 of 2           Date Rcvd: May 27, 2020
                             Form ID: pdf901          Total Noticed: 37
```

```
              ***** BYPASSED RECIPIENTS (continued) *****

              ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr*           +Synchrony Bank c/o PRA Receivables Management, LLC,    PO BOX 41021,    Norfolk, VA 23541-1021
518752513     ##Ditech Financial LLC,    PO Box 6172,    Rapid City, SD  57709-6172
                                                                           TOTALS: 0, * 1, ## 1
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

Addresses marked '++' were redirected to the recipient's preferred mailing address
pursuant to 11 U.S.C. 342(f)/Fed.R.Bank.PR.2002(g)(4).

Addresses marked '##' were identified by the USPS National Change of Address system as undeliverable.  Notices
will no longer be delivered by the USPS to these addresses; therefore, they have been bypassed.  The
debtor's attorney or pro se debtor was advised that the specified notice was undeliverable.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social
Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required
by the bankruptcy rules and the Judiciary's privacy policies.**

Date: May 29, 2020                                   Signature:   /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on May 26, 2020 at the address(es) listed below:
            Andrew L. Spivack    on behalf of Creditor    LOANCARE, LLC nj.bkecf@fedphe.com
            Denise E. Carlon    on behalf of Creditor    NewRez LLC d/b/a Shellpoint Mortgage Servicing
             dcarlon@kmllawgroup.com,   bkgroup@kmllawgroup.com
            Edward Nathan Vaisman    on behalf of Debtor Sandra R. Hankins vaismanlaw@gmail.com,
             G20495@notify.cincompass.com
            Marie-Ann Greenberg    on behalf of Creditor magecf@magtrustee.com
            Sherri Jennifer Smith    on behalf of Creditor    LOANCARE, LLC nj.bkecf@fedphe.com,
             nj.bkecf@fedphe.com
            U.S. Trustee    USTPRegion03.NE.ECF@usdoj.gov
                                                                              TOTAL: 6

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

837371
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for LOANCARE, LLC

| In Re: | Case No:  20-13929 - JKS |
|---|---|
| Sandra R. Hankins | Hearing Date: _____ |
| | Judge:  JOHN K. SHERWOOD |
| | Chapter:  13 |

## CERTIFICATION OF SERVICE

1.      I, Richard Millichap:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC, who represents LOANCARE, LLC in the above captioned matter.

☐ am the _____ in the above case and am representing myself.

2.      On June 4, 2020 I sent a copy of the following pleadings and/or documents to the parties listed below:

Objection to Plan

3.      I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.


Dated:  June 4, 2020 _____          /s/ *Richard Millichap* _____
                                                                            Richard Millichap

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Sandra R. Hankins<br>1393 Essex St.,<br>Rahway, NJ 07065-5042 | Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
|  | Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Edward Nathan Vaisman, Esquire<br>33 Wood Avenue South<br>Suite 600<br>Iselin, NJ 08830 | Debtor's Attorney | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Marie-Ann Greenberg, Trustee<br>Chapter 13 Standing Trustee<br>30 Two Bridges Road Suite 330<br>Fairfield, NJ 07004 | Trustee | ☐ Hand-delivered<br><br>☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |

* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.